[Cite as *State v. Grier*, 2016-Ohio-8036.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 15 MA 0085 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| BREYONA GRIER | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from the Court of Common Pleas of Mahoning County, Ohio
Case No. 2014 CR 407

JUDGMENT:      Reversed and Vacated.

APPEARANCES:

For Plaintiff-Appellee:      Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman Street, 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant:      Atty. Ronald D. Yarwood
DeGenova & Yarwood, Ltd.
42 North Phelps Street
Youngstown, Ohio 44503

JUDGES:

Hon. Cheryl L. Waite
Hon. Mary DeGenaro
Hon. Carol Ann Robb

Dated: December 7, 2016

WAITE, J.

{¶1} Appellant, Breyona Grier, appeals from a Mahoning County Common Pleas Court judgment entry sentencing her to incarceration. Based on the following, the judgment of the trial court is reversed, Appellant's sentence is vacated, and the February 26, 2015 judgment entry sentencing Appellant to community control is hereby reinstated.

{¶2} On April 23, 2014, Appellant attempted to shoplift food from Family Dollar. When her action was discovered, she threw the items at the store employee, pushed the employee away and attempted to escape. On June 12, 2014, Appellant was charged with robbery, in violation of R.C. 2911.02. On July 2, 2014, she entered a guilty plea and the state recommended that Appellant enter mental health court. The matter was referred to mental health court on July 9, 2014.

{¶3} On October 29, 2014, a bench warrant was issued because Appellant was noncompliant with the mental health court program. Appellant's bond was revoked and she was ordered held without bond awaiting further action by the court. An evaluation by Turning Point Health Services was ordered. On December 18, 2014, a magistrate determined that Appellant was in violation of mental health court and she was taken into custody.

{¶4} A sentencing hearing was held on February 26, 2015. The state took no position on sentencing. Defense counsel had been in contact with a program entitled Teen Challenge, which evaluated Appellant and initially found her to be a suitable candidate for the program. The trial court sentenced Appellant to five years

of community control and ordered that she successfully complete the Teen Challenge program. The trial court decision stated:

The Court finds pursuant to R.C. 2929.13(D) that:

a non-prison sanction does not demean the seriousness of the offense; AND a non-prison sanction will adequately punish Defendant and protect the public AND factors decreasing seriousness outweigh those increasing seriousness; AND there is less likelihood of recidivism.

(2/26/15 J.E.)

{¶5} At the conclusion of the sentencing hearing Appellant was remanded to the Mahoning County Jail to await transport to Teen Challenge. On March 25, 2015, the trial court set the matter for a status hearing because Appellant had yet to be transported to the Teen Challenge program. On May 6, 2015, the trial court elected to hold what it captioned a "re-sentencing hearing." At this hearing, defense counsel informed the trial court that Appellant had been rejected by the Teen Challenge program and that other programs were apparently not available. The state's position was that incarceration in a state penitentiary was the best option. At the conclusion of the hearing, the trial court sentenced Appellant to three years of incarceration with credit for time served.

{¶6} Appellant filed this timely appeal. Appellee filed a confession of judgment on August 31, 2015, admitting the trial court improperly sentenced Appellant to a term of incarceration. Appellant filed a stay of execution of sentence on September 8, 2015. Appellee filed a motion in opposition on September 10,

2015, contending Appellant should be required to post a bond before being released from the penitentiary. On September 30, 2015 we granted Appellant's motion to stay conditioned on Appellant posting a bond of $5,000 cash or surety.

{¶7} Appellant raises two assignments of error.

ASSIGNMENT OF ERROR NO. 1

Appellant was denied due process of law as guaranteed by both the Ohio and United State's [sic] Constitution when the trial court imposed a prion [sic] term as part of a "re-sentencing" when it lacked jurisdiction over Appellant.

{¶8} Appellant argues she was denied due process when the trial court imposed a sentence of incarceration at the second sentencing hearing.

{¶9} In reviewing a felony sentence, "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1.

{¶10} Crim.R. 32(C) sets forth the requirements for a valid final judgment in a criminal case. It reads, in pertinent part:

> A judgment of conviction shall set forth the fact of conviction and the sentence. * * * The judge shall sign the judgment and the clerk shall enter it on the journal. A judgment is effective only when entered on the journal by the clerk.

**{¶11}** The underlying purpose of Crim. R. 32(C) is to ensure that a defendant is provided notice as to when final judgment has been entered and the time for filing an appeal has begun. A judgment entry that contains all the elements of Crim.R. 32 is a final appealable order pursuant to R.C. 2502.02. *State v. Baker,* 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, syllabus. Once that final judgment is issued, the trial court's jurisdiction is at an end. *State v. Gilbert,* 143 Ohio St.3d 150, 2014-Ohio-4562, 35 N.E.3d 493, ¶ 9.

**{¶12}** At the first sentencing hearing on February 26, 2015, the state acknowledged that, as Appellant violated the terms of the mental health court, a pre-sentence investigation (PSI) was conducted which did recommend incarceration. However, the prosecutor also stated,

> Your Honor, I don't necessarily adopt the recommendation; just inform you of that, as I know you've already read it. That being the case, Your Honor, again, you know the people that are placed in the mental health court better than I do; so I would respectfully -- I leave it in the court's hands as far as sentencing.

(2/26/15 Tr., pp. 2-3.)

**{¶13}** Thus, the state effectively took no position as to sentencing, leaving it to the discretion of the trial court. Defense counsel then explained the Teen Challenge program and its willingness to consider Appellant for the program: "It's a new program, a woman's program that Teen Challenge has in Willard, Ohio. They interviewed [Appellant] this morning and do find her to be a good candidate." (2/26/15

Tr., p. 4.) Defense counsel was asked whether Teen Challenge was a lock-down facility. Defense counsel responded that he did not believe it was. The court inquired, "[s]o she can walk away [from] there?" Defense counsel answered in the affirmative. *Id*. at 7.

{¶14} The trial court then proceeded to its sentencing colloquy, stating:

The court further finds that a non-prison sanction will not demean the seriousness of the offense, will adequately punish the defendant and protect the public, and that factors decreasing seriousness outweigh those increasing seriousness, and there's less likelihood of recidivism. Therefore, the court's going to place the defendant on five years of community control sanctions to be monitored by the Adult Parole Authority. * * * You're going to be subject to random drug testing during that five year period of time, and you must meet with your probation officer at lease one time per month. That is after you successfully complete the Teen Challenge program.

*Id*. at 8-9.

{¶15} Appellant was ordered into custody to await transport by Teen Challenge to the program's facility. On March 25, 2015, as Appellant was still in custody in the Mahoning County Jail, the trial court issued a judgment entry setting the matter for an April 16th status hearing. Following the status call, a "re-sentencing hearing" was held on May 6, 2015. At this hearing, the prosecutor stated:

So today we are here for, I guess, a re-sentencing or something of that nature. Your Honor, it's my understanding that, you know, if she can't get into Teen Challenge, I mean, what else can we really do for her? At this point the way the state feels is that the penitentiary would be the best as far as getting her the help that she needs to combat her mental health problem, as well as at a cost that is available to her without having to spend too much. So at this time the state will recommend prison.

(5/6/15 Tr., pp. 2-3.)

{¶16} Defense counsel responded that, although Appellant was initially accepted into the Teen Challenge program, subsequent communications with this program resulted in refusal to accept her into the program. Defense counsel indicated that he had attempted to contact other programs to no avail, and that Appellant's mother was willing to accept her into her home under house arrest.

{¶17} The court ultimately decided:

Let the record reflect the defendant was present this date in court for a sentencing -- or a re-sentencing hearing. * * *

The court has considered the record and the oral statements made, as well as the previous presentence investigation report that was prepared and the defendant's records in the Mental Health Court.

Court has also considered the principles and purposes of sentencing under Ohio Revised Code 2929.11 and has balanced the seriousness and recidivism factors under Ohio Revised Code 2929.12.

* * *

Court further finds that defendant is not amenable to community control and prison is consistent with the purposes of sentencing. Therefore, it will be the order of this court that defendant will be sentenced to three years in the Department of Rehabilitations and Corrections, with credit for time served as of this date, along with any future days in custody while she awaits transportation to the appropriate state institution.

When you're released from prison, you will be subject to a mandatory post-release control time of three years.

(5/6/15 Tr., pp. 6-8.)

{¶18} Thus, utilizing the very same pre-sentence investigation and mental health court records obtained prior to the original sentencing, the trial court now concluded that pursuant to R.C. 2929.11 and R.C. 2929.12, imprisonment was warranted. Yet using those same records and considering the same statutory factors only a few months earlier, the court reached a different conclusion. To be sure, at the second "sentencing" hearing the trial court was aware that the Teen Challenge program was not available to Appellant. Otherwise, the record contained absolutely no new information. There were no allegations that Appellant had violated her

community control sentence. Appellant had simply been in custody awaiting transport into the Teen Challenge program. In its confession of judgment, the state admits that, on the record before us, "the trial court improperly sentenced Defendant to a term of incarceration." (8/31/15 Confession of Judgment.)

{¶19} In *State v. Carlisle,* 131 Ohio App.3d 127, 2011-Ohio-6553, 961 N.E.2d 671, the Ohio Supreme Court held, "Absent statutory authority, a trial court is generally not empowered to modify a criminal sentence by reconsidering its own final judgment." *Id.* at ¶ 1. Trial courts have no jurisdiction to modify a final sentence during the period between sentencing and the execution of that sentence. *Id.* at ¶ 13. Once the trial court entered a final judgment as to sentencing, the court lost jurisdiction to "reconsider" that final judgment barring an event that would vest the trial court with new jurisdiction, such as notice of some violation of the terms of the sentence. In accordance with Crim.R. 32(C), the trial court's initial sentencing determination became a final order once it was journalized, on February 26, 2015. The trial court lacked jurisdiction to modify that judgment approximately six weeks later in the absence of any statutory authority or support in the record. A review of this record clearly reveals that the trial court's attempt to modify Appellant's valid sentence was improper and the resulting order is of no effect. Pursuant to *Marcum,* there is clear and convincing evidence that the record does not support the trial court's decision to "re-sentence" Appellant. Appellant's first assignment of error has merit and is sustained.

## ASSIGNMENT OF ERROR NO. 2

The trial court violated Appellant's rights under the Double Jeopardy Clauses of the Fifth and Fourteenth Amendments of the United States Constitution, and Article I, Section 10 of the Ohio Constitution, when it, sua sponte, "re-sentenced" Appellant without jurisdiction to do so and when a sentence was already imposed for the offense.

**{¶20}** In Appellant's second assignment of error, she asserts that double jeopardy prevented the trial court from conducting the second sentencing hearing. Based on our decision to sustain Appellant's first assignment of error, Appellant's second assignment is moot.

### Conclusion

**{¶21}** Once Appellant was sentenced by the trial court on February 26, 2015 and that judgment was properly finalized in accordance with Crim.R. 32(C), the entry became a final appealable order pursuant to R.C. 2502.02. Because it had entered a final order as to Appellant's sentence, the trial court was without jurisdiction, absent any statutory authority or support in the record, to conduct a "re-sentencing hearing." This record contains no such statutory authority or support for the trial court's actions. Therefore, the decision of the trial court is reversed. The sentencing judgment entry dated May 6, 2015 is vacated and the February 26, 2015 judgment sentencing Appellant to five years of community control sanctions is reinstated.

DeGenaro, J., concurs.

Robb, J., concurs.