[Cite as *Driggins v. Bowen*, 2023-Ohio-205.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

RYAN DRIGGINS,

Petitioner,

v.

RICHARD A. BOWEN JR. et al.,

Respondents.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 MA 0039**

---

Writ of Habeas Corpus

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Dismissed and Denied.

---

*Atty. Allison F. Hibbard*, The Brownhoist Building, 4403 St. Clair Avenue, Cleveland, Ohio 44103 for Petitioner and

*Atty. Dave Yost*, Ohio Attorney General, *Atty. Jerri L. Fosnaught,* Assistant Attorney General, Criminal Justice Section, 30 East Broad Street, 23rd Floor, Columbus, Ohio 43215 for Respondents.

Dated: January 19, 2023

**PER CURIAM.**

{¶1} Petitioner Ryan Driggins has filed this original action for a writ of habeas corpus seeking his release from the Ohio State Penitentiary in Youngstown, Ohio. In 2007, Driggins pleaded guilty to reduced charges of murder and aggravated robbery and was sentenced to 18 years to life in prison in exchange for his agreement to testify against an accomplice. Driggins reneged on the agreement, and the trial court granted the state's motion to vacate the plea and advance the case for trial. In 2009, following a jury trial, Driggins was convicted of murder, aggravated robbery, and aggravated burglary, and was sentenced to 38 years to life in prison. Driggins argues his 2009 reconviction and resentence are void because the trial court lacked subject-matter jurisdiction to vacate his 2007 conviction.

{¶2} The petition names as respondent the warden, Richard A. Bowen Jr. The warden has filed a Civ.R. 12(B)(6) motion to dismiss. The warden argues the court should dismiss the petition because Driggins has not met the in forma pauperis filing requirements of R.C. 2969.25 for inmates. He also contends that habeas relief is precluded because Driggins had an adequate, alternative legal remedy by direct appeal to raise his claim. This argument is premised upon the state's supposition that the trial court had subject-matter jurisdiction over Driggins' case, characterizing any alleged error in the trial court's decision to grant the state's motion to vacate the 2007 plea as only an error in the exercise of jurisdiction.

{¶3} However, another of the warden's arguments is meritorious. Driggins cannot demonstrate that he is entitled to immediate release from imprisonment. Therefore, this court grants the warden's Civ.R. 12(B)(6) motion to dismiss and denies the writ.

### 2007 Conviction & Sentence—18 years to life

{¶4} According to his petition, Driggins was indicted on March 15, 2007, in Cuyahoga County Court of Common Pleas case number CR-07493626-A on six counts. (Petition ¶ 3, Exhibit 7.) Counts 1 and 2 were for Aggravated Murder in violation of R.C. 2903.01(A) and (B), respectively, each with firearm and felony-murder

specifications. (Exhibit 7.)  Counts 3 and 4 were for Aggravated Robbery in violation of R.C. 2911.01(A)(1) and (3), respectively, felonies of the first degree, each with firearm specifications. *Id.*   Counts 5 and 6 were for Aggravated Burglary in violation of R.C. 2911.11(A)(1) and (2), respectively, felonies of the first degree, each with firearm specifications. *Id.* Driggins pleaded not guilty. (Exhibit 1.)

**{¶5}** Driggins and the state reached a plea agreement with an agreed sentence conditioned upon Driggins testifying against an accomplice. (Exhibit 3.)  On August 9, 2007, Driggins plead guilty to count 1 as amended from Aggravated Murder to Murder in violation of R.C. 2903.02(A), a felony of the first degree, with a firearm specification and deletion of the felony murder specification. (Exhibit 1.)  He also plead guilty to count 3 as amended to Aggravated Robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree, with deletion of the firearm specification. *Id.*  The remaining counts—counts 2, 4, 5, and 6—were nolled. *Id.*

**{¶6}** On August 13, 2007, the court sentenced Driggins to consecutive terms of 15 years to life for Murder (count 1) and 3 years for the attendant firearm specification, to be served concurrently with 10 years for Aggravated Robbery (count 3) for an aggregate sentence of 18 years to life. (Petition ¶ 3, Exhibit 2.)  Driggins did not appeal.

### 2009 Reconviction & Resentence—38 years to life

**{¶7}** On June 3, 2008, the state moved to vacate Driggins' plea and to advance his case to trial. (Exhibit 3.)  In the motion, the state alleged Driggins breached the plea agreement by his unwillingness to testify against his co-conspirator and, if forced to testify, stated he would fabricate a story or exert his Fifth Amendment right against self-incrimination. *Id.*  The state also alleged that without the testimony of Driggins, its only eyewitness, it had to dismiss the accomplice's case without prejudice to avoid jeopardy attaching to it. *Id.* The trial court granted the state's motion and set Driggins's case for a jury trial as originally indicted. (Exhibit 5.)

**{¶8}** On August 21, 2009, the jury returned a verdict of not guilty of Aggravated Murder with the firearm and felony murder specifications as charged in count 1 of the indictment but guilty of Murder in violation of R.C. 2903.02(A), a felony of the first degree, with a firearm specification, as a lesser included offense under count 1 of the indictment. The jury could not reach a verdict on Aggravated Murder with the firearm and

felony-murder specifications as charged in count 2 of the indictment, but guilty of Murder in violation of R.C. 2903.02(B), a felony of the first degree, with a firearm specification, as a lesser included offense under count 2 of the indictment. The jury found Driggins guilty of the remaining counts—counts 3, 4, 5, and 6—as indicted.

**{¶9}** In a sentencing entry issued on August 31, 2009, the trial court merged counts 1 and 2, 3 and 4, and 5 and 6, as well as their attendant firearm specifications. The trial court sentenced Driggins to terms of 15 years to life for Murder (counts 1 and 2) plus 3 years for the firearm specification, a term of 10 years for Aggravated Robbery (counts 3 and 4) plus 3 years for the firearm specification, and a term of 10 years for Aggravated Burglary (counts 5 and 6) plus 3 years for the firearm specification. The trial court ordered all sentences to be served consecutive to one another for an aggregate sentence of 38 years to life.

**{¶10}** Driggins appealed his 2009 reconviction and resentence to the Eighth District Court of Appeals, raising 22 assignments of error. In his 21st assignment of error, Driggins argued he was denied due process of law and placed twice in jeopardy when the trial court vacated his 2007 conviction and sentence on the prosecutor's motion. The Eighth District overruled that assignment of error and all other assignments of error and affirmed Driggins' 2009 reconviction and resentence. *State v. Driggins*, 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, *appeal not accepted for review*, 135 Ohio St.3d 1416, 986 N.E.2d 31, 2013-Ohio-1622.

**{¶11}** While his direct appeal was pending, Driggins filed a petition for postconviction relief, which the trial court denied. *State v. Driggins*, Cuyahoga M.C. No. CR-07-493626-A (Sept. 20, 2012). Driggins did not appeal this decision.

**{¶12}** On March 14, 2016, Driggins filed a pro se Motion to Vacate Void Sentence and Resentence in the trial court. Citing the Supreme Court of Ohio decision in *State v. Gilbert*, 143 Ohio St.3d 150, 2014-Ohio-4562, 35 N.E.3d 493, Driggins argued his 2009 reconviction and resentence are void because the trial court was without subject-matter jurisdiction to revisit his 2007 conviction and sentence at the behest of the prosecutor. So Driggins requested the trial court vacate his 2009 judgment and resentence him. The trial court summarily denied the motion three days later. *State v. Driggins*, Cuyahoga M.C. No. CR-07-493626-A (Mar. 17, 2016). Driggins filed a timely Notice of Appeal to the

Eighth District Court of Appeals. *State v. Driggins*, 8th Dist. Cuyahoga No. 104352 (Apr. 15, 2016).

**{¶13}** The Eighth District issued a Journal Entry on June 13, 2016, indicating the record was complete and Driggins' brief was due July 6, 2016. However, the docket provides no indication the clerk served Driggins with notice of this entry. On July 18, 2016, the Eighth District issued a Journal Entry sua sponte dismissing the appeal for failure to file a brief. Driggins attempted twice to have the appeal reinstated, each time submitting evidence he had not received notice of the court's June 13, 2016 entry establishing the record as complete and setting a due date for his brief. The court summarily denied both attempts.

**{¶14}** Driggins initiated this original action by filing a Petition for Writ of Habeas Corpus. Driggins argues his 2009 reconviction is void because the trial court was without subject-matter jurisdiction.[1] Driggins' 2007 conviction and sentence are in an August 13, 2007 Journal Entry satisfying the requirements of Crim.R. 32(C) for a final judgment: the judgment entry that sets forth the fact of the conviction, the sentence, the judge's signature, and the time stamp indicating that the clerk entered the judgment in the journal. (Exhibit 2.)

**{¶15}** Information as to whether it is Driggins' 2007 or 2009 conviction that forms the basis of his current imprisonment is provided by Exhibit 9 attached to Driggins' petition. The Ohio Department of Rehabilitation and Correction website has a page dedicated to Offender Search. *State v. Blakovich*, 7th Dist. Columbiana No. 20 CO 0011, 2021-Ohio-2355, ¶ 12, citing *State ex rel. Brown v. Ohio Dept. of Rehab. & Corr.,* 139 Ohio St.3d 433, 2014-Ohio-2348, 12 N.E.3d 1187, ¶ 2 (judicial notice of ODRC's Offender Search website). It returns data on offenders incarcerated in an Ohio prison under Department supervision or judicially released. Data includes the offenses and sentences for which an inmate is imprisoned, their admission date, and the effective date of their sentence(s).

---

[1]Driggins acknowledges in his petition he was also convicted in the Richland County Court of Common Pleas of Illegal Conveyance to Detention Facility and Drug Trafficking and sentenced to one year. However, this sentence is irrelevant to Driggins' claim in habeas corpus.

{¶16} Driggins included his printout with his petition. (Exhibit 9.) It reflects Driggins' current imprisonment results from his 2009 reconviction and resentence. The offenses and sentences listed are the ones resulting from his 2009 reconviction and resentence—Murder (15 years to life plus 3 years for firearm specification), Aggravated Robbery (10 years), and Aggravated Burglary (10 years). The effective date of those sentences is listed as September 2, 2009, yet his admission date is listed as August 20, 2007, due to his original 2007 conviction. His unrelated 2015 convictions in Richland County for Illegal Conveyance to Detention Facility and Drug Trafficking with 1-year concurrent sentences are also listed. A more recent search for Driggins on that website returns the same data reflected in the printout attached to his petition as Exhibit 9. https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A532660 (accessed January 13, 2023).

{¶17} Counsel for the warden has filed a Motion to Dismiss under Civ.R. 12(B)(6), arguing Driggins' claim is not cognizable in a habeas corpus action because he had an adequate alternative legal remedy by which to raise his claims, he has not demonstrated he is entitled to immediate release from confinement, and his petition is fatally defective for failing to have either a "statement that sets forth all other cash and things of value owned by the inmate at that time" or the certified statement of the institution's cashier required for an inmate in forma pauperis filing under R.C. 2965.25(C). Driggins has filed a brief opposing the warden's Motion to Dismiss. The warden filed a reply.

### Habeas Procedure

{¶18} To receive a writ of habeas corpus, a petitioner must show he is being unlawfully restrained of his liberty and that he is entitled to immediate release from prison or confinement. R.C. 2725.01; *State ex rel. Cannon*, 155 Ohio St.3d 213, 2018-Ohio-4184, 120 N.E.3d 776, ¶ 10. Ohio prescribes a basic, summary procedure for bringing a habeas corpus action. *Waites v. Gansheimer*, 110 Ohio St.3d 250, 2006-Ohio-4358, 852 N.E.2d 1204, ¶ 8. That procedure is augmented by the Rules of Civil Procedure, which generally apply in original actions for extraordinary writs, including habeas corpus actions. *Brooks v. Kelly*, 144 Ohio St.3d 322, 2015-Ohio-2805, 43 N.E.3d 385, ¶ 6.

{¶19} First, application is by petition that contains certain information. R.C. 2725.04. Then, if the court decides the petition states a facially valid claim, it must allow

the writ. R.C. 2725.06. Conversely, if the petition states a claim for which habeas corpus relief cannot be granted, the court should not allow the writ and dismiss the petition. *Pegan v. Crawmer*, 73 Ohio St.3d 607, 608-609, 653 N.E.2d 659 (1995).

### Civ.R. 12(B)(6) Standard of Review

**{¶20}** The purpose of a Civ.R. 12(B)(6) motion is to test the sufficiency of the complaint. *Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434, ¶ 11. This is why the movant may not rely on allegations or evidence outside the complaint. Civ.R. 12(B); *Id.* A court may dismiss a habeas action under Civ.R. 12(B)(6) for failure to state a claim upon which relief may be granted "if, after all factual allegations are presumed true and all reasonable inferences are made in [the petitioner's] favor, it appears beyond doubt that he could prove no set of facts entitling him to the requested extraordinary relief in habeas corpus." *Handcock v. Shoop*, 156 Ohio St.3d 282, 2019-Ohio-718, 125 N.E.3d 872, ¶ 5, quoting *Keith v. Bobby*, 117 Ohio St.3d 470, 2008-Ohio-1443, 884 N.E.2d 1067, ¶ 10.

### Filing Fee

**{¶21}** Initially, we address the warden's contention that Driggins' petition must be dismissed because he violated R.C. 2969.25(C). R.C. 2969.25 details various filing requirements for an inmate who files a civil action against a government entity or employee. R.C. 2969.25(C) sets forth requirements for an inmate seeking a waiver of the prepayment of the full filing fees. Noncompliance with R.C. 2969.25(C) is a proper reason to dismiss an inmate's action. *Davis v. Hill*, 166 Ohio St.3d 516, 2022-Ohio-485, 187 N.E.3d 543, ¶ 7.

**{¶22}** In his Brief in Opposition to Respondent's Motion to Dismiss, Driggins points out that his counsel paid the filing fee contemporaneously with filing his petition. In his Reply, the warden acknowledges that if the filing fee has been paid, then his argument is moot. A review of the docket reflects that Driggins' counsel paid the full filing fee when filing the petition. Therefore, R.C. 2969.25(C) is inapplicable to this matter.

### State v. Gilbert

**{¶23}** Driggins argues that under the Supreme Court of Ohio's decision in *State v. Gilbert*, 143 Ohio St.3d 150, 2014-Ohio-4562, 35 N.E.3d 493, the trial court lacked subject-matter jurisdiction to vacate his 2007 conviction and sentence and, thus, his 2009

reconviction and resentence of 38 years to life is void. The Court decided *Gilbert* in 2014, a year and a half *after* it declined to accept Driggins' direct appeal of his 2009 reconviction and resentence. The Court held that "[o]nce a defendant has been sentenced by a trial court, that court does not have jurisdiction to entertain a motion by the state to vacate the defendant's guilty plea and sentence based upon the defendant's alleged violation of a plea agreement." *Id.* at syllabus.

**{¶24}** Gilbert's plea agreement was conditioned upon him testifying against an accomplice in a murder case after being indicted on several charges. *Id.* at ¶ 2. In exchange, the state dismissed some charges against him. *Id.* Without waiting for him to testify against his accomplice, as expected in the plea agreement, the trial court sentenced Gilbert to a prison term of 18 years. *Id.* at ¶ 4. Subsequently, after he began serving his prison term, Gilbert refused to testify as promised. A year after the trial court initially sentenced him, the state filed a motion asking the trial court to vacate Gilbert's plea because he did not cooperate with the state as he had agreed. *Id.* at ¶ 5. The trial court granted the state's request, withdrew the original plea agreement, and vacated the sentence. Gilbert then entered into a second plea agreement and received a sentence of 18 years to life imprisonment. *Id.*

**{¶25}** On Gilbert's direct appeal, the First District Court of Appeals ordered briefing on whether the trial court had jurisdiction to grant the state's motion to vacate the plea and then reconsider its own judgment and resentence the defendant. *Id.* at ¶ 5. The First District reversed and remanded to the trial court to vacate its order granting the state's motion to vacate the original plea and sentence and ordered the trial court to reinstate its original sentence. *Id.* at ¶ 6.

**{¶26}** The Supreme Court agreed with the First District, noting that Crim.R. 32(C) lists the requirements of a valid final judgment in a criminal case as one setting forth (1) the fact of the conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp indicating that the clerk entered the judgment in the journal. *Gilbert* at ¶ 8. The Supreme Court then held that "[o]nce a final judgment has been issued pursuant to Crim.R. 32, the trial court's jurisdiction ends." *Id.* at ¶ 9. The Supreme Court noted the state's argument that contract principles apply to the interpretation and enforcement of plea agreements but concluded: "those principles are not so flexible to permit jurisdiction

to be maintained in perpetuity to enforce such agreements." *Id.*, citing *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 50. Ultimately, the Supreme Court concluded that "[if] the trial court is concerned with the defendant abiding by the terms of the plea agreement, the solution is to postpone sentencing until after the defendant has performed the desired act." *Id.* at ¶ 13.

**{¶27}** A year after the Court's *Gilbert* decision, a similar case arose in the Tenth District Court of Appeals in *State v. Oliver*, 10th Dist. Franklin No. 15AP-810, 2016-Ohio-475. In 2004, the state charged Oliver with murder and aggravated robbery. The parties reached a plea agreement wherein Oliver agreed to cooperate fully with the investigation and prosecution of the crimes against the victim, including agreeing to testify fully and truthfully in any proceeding about those crimes. Oliver pleaded guilty to the stipulated lesser-included offense of involuntary manslaughter and aggravated robbery, both with firearm specifications. The trial court sentenced Oliver to the jointly recommended aggregate sentence of 17 years. Oliver did not appeal his conviction or sentence.

**{¶28}** In 2006, the trial court granted the state's motion to vacate Oliver's 2004 plea based on his non-cooperation and refusal to testify fully and truthfully. The parties reached another plea agreement. Oliver pleaded guilty to involuntary manslaughter and aggravated robbery without a joint recommendation as to sentence. The trial court sentenced Oliver to an aggregate prison term of 23 years. Oliver did not appeal this conviction and sentence either.

**{¶29}** In 2015, Oliver filed a Motion for Resentencing to Vacate a Void Judgment, citing *Gilbert*, which the trial court denied. On appeal to the Tenth District, the court undertook a de novo review on whether the trial court had subject-matter jurisdiction to void Oliver's original guilty plea and subsequently reconvict and resentence him under the second guilty plea. *State v. Oliver*, 10th Dist. Franklin No. 15AP-810, 2016-Ohio-475, ¶ 10.

**{¶30}** The Tenth District found *Gilbert* directly applicable to Oliver's case, concluding the trial court lacked jurisdiction to entertain the state's post-sentence motion to vacate Oliver's guilty plea and sentence based on his alleged violation of the plea agreement. The state argued Oliver waived any issue he may have had regarding the trial court's jurisdiction to vacate his plea agreement and subsequently resentence him

because he did not file a direct appeal of the 2006 conviction. The trial court rejected that argument, reasoning subject-matter jurisdiction can never be waived and may be challenged at any time because it goes to the power of the court to adjudicate the merits of a case. *Id.* at ¶ 15.

{¶31} The state advanced several other arguments aimed at the *Gilbert* decision, including that it does not apply retroactively, that it cannot prevent the state from relying on existing rules of procedure to vacate a plea, and that laches should operate to bar its application. The court found none of those arguments could overcome the fact that a court lacking subject-matter jurisdiction entered the 2006 judgment and, as such, is a nullity and void ab initio. *Id.* at ¶ 17. The court reversed and remanded the case to the trial court with instructions to grant Oliver's motion to vacate a void judgment and reinstate the 2004 judgment entry of conviction and sentence. *Id.* at ¶ 18.

{¶32} The warden makes the conclusory assertion that "the lack of jurisdiction in *Gilbert* was not a lack of subject matter jurisdiction, but rather an error in the exercise of jurisdiction." He cites no authority for this proposition and does not explain how the trial court's act of vacating the defendant's plea was an error in the exercise of jurisdiction.

{¶33} A court's jurisdiction over a particular case is one of five types of jurisdiction identified by the Supreme Court of Ohio in *Ostanek v. Ostanek*, 166 Ohio St.3d 1, 2021-Ohio-2319, 181 N.E.3d 1162, ¶ 18: (1) territorial jurisdiction, (2) monetary jurisdiction, (3) personal jurisdiction, (4) subject-matter jurisdiction, and (5) jurisdiction over a particular case. This case implicates consideration of the latter two—subject-matter jurisdiction and jurisdiction over the case.

{¶34} "There is a distinction between a court that lacks subject-matter jurisdiction over a case and a court that improperly exercises that subject-matter jurisdiction once conferred upon it." *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 10. Subject-matter jurisdiction is a court's constitutional or statutory power to entertain and adjudicate a particular class or type of case. *Corder v. Ohio Edison Co.*, 162 Ohio St.3d 639, 2020-Ohio-5220, 166 N.E.3d 1180, ¶ 14. A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case. *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 19. It is a "condition precedent to the court's ability to hear the case. If a court acts

without jurisdiction, then any proclamation by that court is void." *Pratts* at ¶ 11, quoting *United States v. Cotton*, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002); *Patton v. Diemer*, 35 Ohio St.3d 68, 518 N.E.2d 941 (1988), paragraph three of the syllabus.

**{¶35}** Jurisdiction over a particular case, sometimes also referred to as "jurisdiction over the case," "exercise of jurisdiction over the case," or "case jurisdiction," involves consideration of the rights of the parties. *Id.* Of the different types of jurisdiction, jurisdiction over a particular case has generated perhaps the least case law and can become conflated with subject-matter jurisdiction. *State ex rel. Hare v. Russell*, 1st Dist. Hamilton No. C-210344, 2022-Ohio-1932, ¶ 3, 11. It connotes "the court's authority to proceed or rule on a case that is within the court's subject-matter jurisdiction." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 19, citing *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 12. This reference to "[a] court's jurisdiction over a particular case" "involves consideration of the rights of the parties." *Id.* However, " ' "[o]nce a tribunal has jurisdiction over both the subject matter of an action and the parties to it, '* * * the right to hear and determine is perfect; and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred * * *.' " ' " (Ellipses added in *Pizza*.) *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 26, quoting *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 12, quoting *State ex rel. Pizza v. Rayford*, 62 Ohio St.3d 382, 384, 582 N.E.2d 992 (1992), quoting *Sheldon's Lessee v. Newton*, 3 Ohio St. 494, 499 (1854).

**{¶36}** The availability of habeas as a remedy depends on whether the court lacked subject-matter jurisdiction or jurisdiction over the particular case. If a court lacks subject-matter jurisdiction, any order issued by that court in that case is void ab initio. *Harper* at ¶ 23. When a specific action is within a court's subject-matter jurisdiction, any error in the exercise of that jurisdiction renders the court's judgment voidable, not void. *Pratts* at ¶ 12, 21. When a court's judgment is void because it lacks subject-matter jurisdiction, habeas is still a proper remedy despite the availability of appeal. *McDougald v. Bowerman*, 161 Ohio St.3d 268, 2020-Ohio-3942, 162 N.E.3d 762, ¶ 7. In contrast,

any errors in the court's exercise of jurisdiction must be raised on direct appeal. *State v. Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 27.

**{¶37}** "The effect of determining that a judgment is void is well established. It is as though such proceedings had never occurred; the judgment is a mere nullity * * * and the parties are in the same position as if there had been no judgment." *Romito v. Maxwell*, 10 Ohio St.2d 266, 267, 227 N.E.2d 223 (1967). It is of no force or effect and can be disregarded entirely in any other court. *Haley v. Hanna*, 93 Ohio St. 49, 52, 112 N.E. 149 (1915); *Tari v. State*, 117 Ohio St. 481, 494, 159 N.E. 594 (1927); *Union Sav. Bank & Tr. Co. v. W. Union Tel. Co.*, 79 Ohio St. 89, 86 N.E. 478 (1908), syllabus. Ohio courts possess the inherent power and authority to vacate a void judgment. *Patton v. Diemer*, 35 Ohio St.3d 68, 70, 518 N.E.2d 941 (1988).

**{¶38}** The language used by the Supreme Court of Ohio in *Gilbert* does not support the warden's argument that it did not involve subject-matter jurisdiction. In rejecting the state's argument that Gilbert submitted to the trial court's jurisdiction when he entered the second plea, the Court underscored the absence of subject-matter jurisdiction as the basis for its decision:

> The state also argues that Gilbert submitted to the court's jurisdiction when he entered a second plea after he was brought back to the trial court for resentencing. But the trial court no longer had jurisdiction, and a defendant cannot waive that which does not exist. *Colley v. Colley,* 43 Ohio St.3d 87, 92, 538 N.E.2d 410 (1989) (*subject-matter jurisdiction* generally cannot be effected by agreement or consent). In *State v. Purnell*, 171 Ohio App.3d 446, 2006-Ohio-6160, 871 N.E.2d 613, ¶ 12 (1st Dist.), the First District Court of Appeals stated:

> "The parties cannot confer by consent or acquiescence *subject-matter jurisdiction* on a court where it is otherwise lacking. See *Colley v. Colley* (1989), 43 Ohio St.3d 87, 92, 538 N.E.2d 410, citing *Commodity Futures Trading Comm. v. Schor* (1986), 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675; see, also, *State v. Flynt* (1975), 44 Ohio App.2d 315, 317, 73 O.O.2d 373, 338 N.E.2d 554 ('Since *jurisdiction of subject*

*matter* is fixed by law, the consent of the defendant cannot create such jurisdiction')."

(Emphasis added.) *State v. Gilbert*, 143 Ohio St.3d 150, 2014-Ohio-4562, 35 N.E.3d 493, ¶ 10.

{¶39} Also, the Court's reliance on its previous decision in *State v. Carlisle*, 131 Ohio St.3d 127, 2011-Ohio-6553, 961 N.E.2d 671, reflects the lack of subject-matter jurisdiction was the type of jurisdiction that underpinned its decision. Subject-matter jurisdiction is the only type of jurisdiction the absence of which can describe what exists after a trial court enters final judgment under Crim.R. 32(C). The Court quoted *Carlisle*: " '[a]bsent statutory authority, a trial court is generally not empowered to modify a criminal sentence by reconsidering its own final judgment.' " *Gilbert* at ¶ 8, quoting *Carlisle* at ¶ 1.

{¶40} Driggins is imprisoned by virtue of a judgment entered by the Cuyahoga County Court of Common Pleas. It is helpful to conceptualize the varying scope of a common pleas court's subject-matter jurisdiction as an inverted pyramid. At the top, its broadest part, is the provision for courts of common pleas in the Ohio Constitution. The Ohio Constitution vests the courts of common pleas with statewide "original jurisdiction over all justiciable matters * * * *as may be provided by law.*" (Emphasis added.) Article IV, Section 4(B); Article IV, Section 4(A) ("There shall be a court of common pleas and such divisions thereof as may be established by law serving each county of the state. Any judge of a court of common pleas may temporarily hold court in any county."); *Cheap Escape Co. v. Haddox, L.L.C.,* 120 Ohio St.3d 493, 2008-Ohio-6323, 900 N.E.2d 601, ¶ 7 ("[C]ourts of common pleas * * * are created by the Ohio Constitution and have statewide subject-matter jurisdiction * * *."); *Wiegand v. Deutsche Bank Natl. Trust,* 8th Dist. Cuyahoga No. 97424, 2012-Ohio-933, ¶ 4 ("The Ohio Constitution created the general courts of common pleas and granted them statewide jurisdiction."); *Arlington Bank v. BEE, Inc.,* 10th Dist. Franklin No. 10AP-41, 2010-Ohio-6040, ¶ 12 ("The Ohio Constitution created the courts of common pleas and granted them statewide subject matter jurisdiction.").

{¶41} The initial descent into narrower parts of the inverted pyramid is the Ohio Constitution's circumscription of the courts of common pleas' subject-matter jurisdiction to "as may be provided by law." Article IV, Section 4(B). Thus, statutory authority, i.e.,

the Revised Code, inevitably becomes the divining rod for the source of a court's subject-matter jurisdiction or, as noted by the Court in *Carlisle*, the lack thereof. Of particular relevance to this case is R.C. 2931.03, which provides in relevant part: "The court of common pleas has original jurisdiction of all crimes and offenses, except in cases of minor offenses the exclusive jurisdiction of which is vested in courts inferior to the court of common pleas." Therefore, pursuant to R.C. 2931.03, "a common pleas court has subject-matter jurisdiction over felony cases." *Smith v. Sheldon*, 157 Ohio St.3d 1, 2019-Ohio-1677, 131 N.E.3d 1, ¶ 8. And, of course, there are numerous other statutes in the Revised Code that even further narrow a court of common pleas' subject-matter jurisdiction; so many so the Court has explained that when a court of common pleas lacks subject-matter jurisdiction, "it is almost always because a statute *explicitly removed* that jurisdiction." (Emphasis sic.) *Ostanek v. Ostanek*, 166 Ohio St.3d 1, 2021-Ohio-2319, 181 N.E.3d 1162, ¶ 29, quoting *Ohio High School Athletic Ass'n v. Ruehlman*, 157 Ohio St.3d 296, 2019-Ohio-2845, 136 N.E.3d 436, ¶ 9.

{¶42} The Court's decision in *Carlisle*, and the one relied upon by it in *Gilbert*, explains why, as a general rule, a court of common pleas does not have subject-matter jurisdiction to revisit a final judgment of conviction and sentence. In *Carlisle*, the Court analyzed scenarios in which the Ohio General Assembly granted trial courts the ability to modify a final sentencing order. *Id.* at ¶ 13-16. For example, R.C. 2947.061 permitted a trial court to impose probation on an offender after they had served a specified portion of their sentence. *Id.* at ¶ 14. R.C. 2929.51 permitted a trial court, up to the time an offender was delivered to the institution where they would serve their sentence, the ability to suspend the sentence and place the offender on probation. *Id.* However, each of these statutes had been repealed by the time *Carlisle* was decided. *Id.* The repeal of those statutes eliminated bases on which the trial court could have modified a previously pronounced sentence. *Id.* at ¶ 16. Without that statutory authority, the Court affirmed the default rule that the trial court lacked authority to modify its sentence once a final order had been issued. *Id.* at ¶ 14-16.

{¶43} The warden contends the Cuyahoga County Court of Common Pleas had jurisdiction over Driggins' case under R.C. 2931.03, the statute that imbues courts of common pleas with felony criminal jurisdiction. In Driggins' first case, the Cuyahoga

County Court of Common Pleas issued a Journal Entry on August 13, 2007, acknowledging Driggins' previous entry of guilty pleas and then proceeded to sentence him to consecutive terms of 15 years to life for Murder (count 1) and 3 years for the attendant firearm specification, to be served concurrently with 10 years for Aggravated Robbery (count 3) for an aggregate sentence of 18 years to life.  The entry satisfied the requirements of Crim.R. 32(C) for a final judgment: the judgment entry that sets forth the fact of the conviction, the sentence, the judge's signature, and the time stamp indicating that the clerk entered the judgment in the journal. (Exhibit 2.)  And as this court has observed, "[o]nce that final judgment is issued, the trial court's jurisdiction is at an end." *State v. Grier*, 7th Dist. Mahoning No. 15 MA 0085, 2016-Ohio-8036, ¶ 11, citing *State v. Gilbert,* 143 Ohio St.3d 150, 2014-Ohio-4562, 35 N.E.3d 493, ¶ 9.

**{¶44}**  The state filed its Motion to Vacate Plea and Advance for Trial a year later on August 9, 2008.[2]  On that date, Driggins was serving his prison sentence under the custody of the Ohio Department of Rehabilitation and Correction.  On that date, the Cuyahoga County Court of Common Pleas jurisdiction remained at an end.  Indictment is the only method of invoking a court of common pleas' R.C. 2931.03 felony jurisdiction. Section X, Article I, of the Ohio Constitution; Crim.R. 7; *Click v. Eckle*, 174 Ohio St. 88, 89, 186 N.E.2d 731 (1962).  It is undisputed that Driggins had not been re-indicted or newly indicted.  The warden has identified no statutory authority granting a court of common pleas renewed subject-matter jurisdiction following entry of final judgment.

### ***Res Judicata***

**{¶45}**  The warden makes the conclusory assertion that Driggins' claim is barred under the doctrine of res judicata.  Res judicata precludes a convicted defendant from litigating, in a collateral proceeding, any claim they raised or could have raised at their trial or in their direct appeal. However, as this court has recognized, the doctrine of res judicata does not bar a claim that a judgment is void for lack of subject-matter jurisdiction.

---

[2]The motion was filed by then Cuyahoga County Assistant Prosecuting Attorney Pinkey S. Carr.  Since January 2012, she served as a judge of the Cleveland Municipal Court until October 18, 2022, when the Supreme Court of Ohio indefinitely suspended her from the practice of law in Ohio and immediately suspended her from judicial office without pay for the duration of her disciplinary suspension. *Disciplinary Counsel v. Carr*, Slip Opinion No. 2022-Ohio-3633.

*State v. Clay*, 7th Dist. No. 17 MA 0113, 2018-Ohio-985, 108 N.E.3d 642, ¶ 39. Hence, only misdirection can explain the warden's cursory treatment of this assertion.

**{¶46}** One element of res judicata is that the court adjudicating the claim or issue has subject-matter jurisdiction. *Diagnostic & Behavioral Health Clinic, Inc. v. Jefferson Cty. Mental Health, Alcohol & Drug Addiction Bd.*, 7th Dist. Jefferson No. 01 JE 5, 2002-Ohio-1567, ¶ 10-12. R.C. 2725.05 expressly provides that a writ of habeas corpus is not allowed if the court issuing the judgment restraining the petitioner's liberty had jurisdiction to issue it. Put differently, a habeas petitioner must demonstrate the trial court did not have subject-matter jurisdiction. Since the absence of subject-matter jurisdiction is an essential precursor to issuing a writ of habeas corpus, res judicata bears no relevance to a merit determination of a habeas petition (except in the case of successive habeas petitions).

**{¶47}** Still, policy considerations have led courts to proclaim, for added measure, that an overarching exception precludes application of the res judicata doctrine in the context of a habeas action. Habeas corpus actions are exempt from res judicata because "[c]onventional notions of finality of litigation have no place where life or liberty is at stake * * *." *Natl. Amusements, Inc. v. City of Springdale*, 53 Ohio St.3d 60, 63, 558 N.E.2d 1178 (1990), quoting *Sanders v. United States*, 373 U.S. 1, 8, 83 S.Ct. 1068, 1073, 10 L.Ed.2d 148 (1963). "In short, the object of habeas corpus is to determine the *legality* of the restraint under which a person is held." (Emphasis added.) *In re Lockhart*, 157 Ohio St. 192, 194, 105 N.E.2d 35 (1952).

### *Immediate Release*

**{¶48}** "To be entitled to a writ of habeas corpus, a party must show that he is being unlawfully restrained of his liberty, R.C. 2725.01, and that he is entitled to immediate release from prison or confinement." *State ex rel. Cannon v. Mohr*, 155 Ohio St.3d 213, 2018-Ohio-4184, 120 N.E.3d 776, ¶ 10. While Driggins' complaint alleges facts sufficient to survive a Civ.R. 12(B)(6) motion to dismiss on the issue of the lawfulness of his current conviction and incarceration, it is insufficient to demonstrate that he is entitled to immediate release from prison.

**{¶49}** As *Gilbert* and *Oliver* demonstrate, the defendant's remedy is limited to having their last conviction and sentence vacated, and their earlier conviction and

sentence reinstated. But those cases involved direct appeals, not habeas, where there is the additional requirement that the defendant demonstrates their entitlement to immediate release from confinement. Because this is an original action in habeas and not a direct appeal, this court is not vested with authority to remand this case to the Cuyahoga County Court of Common Pleas with instructions to vacate Driggins' 2009 reconviction and resentence and reinstate his 2007 conviction and sentence. Moreover, even if that authority existed, Driggins would remain in prison with a sentence containing a maximum term of life imprisonment.

{¶50} Because a habeas petitioner must show they are entitled to immediate release from prison or confinement, habeas corpus is "available only when the petitioner's *maximum* sentence has expired and he is being held unlawfully." (Emphasis sic.) *State ex rel. Fuller v. Eppinger*, 153 Ohio St.3d 269, 2018-Ohio-2629, 104 N.E.3d 762, ¶ 7. "An inmate is not entitled to a writ of habeas corpus upon completion of his *minimum* sentence." (Emphasis sic.) *Id.*, citing *State ex rel. Lockhart v. Sheldon*, 146 Ohio St.3d 468, 2016-Ohio-627, 58 N.E.3d 1124, ¶ 5.

{¶51} Assuming Driggins' 2009 reconviction and resentence are unlawful, his 2007 conviction and sentence, which also has a maximum term of life imprisonment, would remain. In the context of an original action in habeas, Driggins' case is like that where the petitioner is imprisoned on more than one case or conviction, one of which may be invalid. In that scenario, the Supreme Court of Ohio has held: " 'Where a petitioner is incarcerated for several crimes, the fact that the sentencing court may have lacked jurisdiction to sentence him on one of the crimes does not warrant his release in habeas corpus.' " *Haynes v. Voorhies*, 110 Ohio St.3d 243, 2006-Ohio-4355, 852 N.E.2d 1198, ¶ 7, quoting *Marshall v. Lazaroff*, 77 Ohio St.3d 443, 444, 674 N.E.2d 1378 (1997), quoting *Swiger v. Seidner*, 74 Ohio St.3d 685, 687, 660 N.E.2d 1214 (1996).

{¶52} Likewise, habeas is not available even if invalidating one of the petitioner's convictions would entitle them to earlier consideration of release on parole rather than outright release from prison. *Hanes v. Haviland*, 93 Ohio St.3d 465, 755 N.E.2d 898, 899 (2001). This is because Ohio law gives a convicted inmate "no legitimate claim of entitlement to parole prior to the expiration of a valid sentence of imprisonment." *State ex rel. Seikbert v. Wilkinson,* 69 Ohio St.3d 489, 490, 633 N.E.2d 1128 (1994). The statute

granting the parole authority discretion to grant parole, R.C. 2967.03, "creates no expectancy of parole or a constitutional liberty interest sufficient to establish a right of procedural due process." *Id.,* citing *Hattie v. Anderson,* 68 Ohio St.3d 232, 233, 626 N.E.2d 67 (1994); *State ex rel. Adkins v. Capots,* 46 Ohio St.3d 187, 188, 546 N.E.2d 412 (1989). It follows that an inmate has no constitutional or statutory right to parole, no concomitant right to a particular date for the consideration of parole, and a change in such dates is not a constitutional violation. *State ex rel. Henderson v. Ohio Dept. of Rehab. & Corr.,* 81 Ohio St.3d 267, 268, 690 N.E.2d 887 (1998).

**{¶53}** Accordingly, because Driggins' petition contains no set of facts that could demonstrate his entitlement to immediate release from imprisonment, this court grants the warden's motion to dismiss and denies the writ

**{¶54}** Costs taxed against Relator. Final order. Clerk to serve copies of this decision and judgment entry pursuant to the civil rules.

**JUDGE CAROL ANN ROBB**

**JUDGE CHERYL L. WAITE**

**JUDGE DAVID A. D'APOLITO**

Case No. 22 MA 0039